UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ASCENSION PROVIDENCE<br>6901 Medical Parkway<br>Waco, TX  76712 | )<br>)<br>)<br>) |
| ASCENSION PROVIDENCE HOSPITAL-<br>SOUTHFIELD CAMPUS<br>16001 West 9 Mile Road<br>Southfield, MI 48075 | ) Case No.      2:21-cv-369<br>)<br>)<br>)<br>) |
| ASCENSION SAINT JOHN HOSPITAL<br>22101 Moross<br>Detroit, MI  48236 | )<br>)<br>)<br>) |
| ASCENSION SAINT VINCENT EVANSVILLE<br>3700 Washington Avenue<br>Evansville, IN  47750 | )<br>)<br>)<br>) |
| ASCENSION SAINT VINCENT<br>INDIANAPOLIS WEST<br>2001 West 86th Street<br>Indianapolis, IN  46260 | )<br>)<br>)<br>)<br>) |
| ASCENSION SETON MEDICAL CENTER<br>AUSTIN<br>1201 West 38th Street<br>Austin, TX  78705 | )<br>)<br>)<br>)<br>) |
| ASCENSION VIA CHRISTI ST. FRANCIS<br>929 North Saint Francis<br>Wichita, KS  67214 | )<br>)<br>)<br>) |
| FRANCISCAN HEALTH CROWN POINT<br>1201 South Main Street<br>Crown Point, IN  46307 | )<br>)<br>)<br>) |
| FRANCISCAN HEALTH HAMMOND<br>5454 Hohman Avenue<br>Hammond, IN  46320 | )<br>)<br>)<br>) |
| FRANCISCAN HEALTH INDIANAPOLIS<br>8111 South Emerson Avenue<br>Indianapolis, IN  46237 | )<br>)<br>)<br>)<br>) |

4857-5599-0276v5

```
FRANCISCAN HEALTH LAFAYETTE EAST      )
1701 South Creasy Lane                )
Lafayette, IN  47905                  )
                                      )
FRANCISCAN HEALTH MICHIGAN CITY       )
3500 Franciscan Way                   )
Michigan City, IN  46360              )
                                      )
FRANCISCAN HEALTH OLYMPIA FIELDS      )
CAMPUS                                )
20201 South Crawford Avenue           )
Olympia Fields, IL  60461             )
                                      )
      Plaintiffs,                     )
                                      )
vs.                                   )
                                      )
XAVIER BECERRA,                       )
Secretary of the United States Department of  )
Health and Human Services             )
200 Independence Ave., S.W. Rm. 700-E )
Washington, D.C.  20201               )
                                      )
      Defendant.                      )
```

## COMPLAINT FOR JUDICIAL REVIEW

Plaintiffs Hospitals sue Defendant Xavier Becerra in his official capacity as Secretary of the United States Department of Health and Human Services (HHS) and seek judicial review of dismissals of their appeals before the Provider Reimbursement Review Board (PRRB).

### STATEMENT OF THE CASE

1. This action is an appeal of a final determination by PRRB, arising under 42 U.S.C. § 1395oo(f)(1).

2. The Hospitals appeal the PRRB's dismissal of their Uncompensated Care (UC) reimbursement appeals for lack of jurisdiction. Congress precluded administrative and judicial review of any estimate or period used by the Secretary of CMS to calculate

2

UC reimbursement. *See* 42 U.S.C. § 1395ww(r)(3) ("the Review Preclusion Statute"). The Hospitals seek judicial review of the PRRB's decision because it erred in finding that Congress precluded administrative or judicial review of the agency's actions here when determining their UC reimbursement.

3.  The Hospitals assert that the PRRB's analysis was flawed. Though Congress has precluded review of the estimates used to calculate the specific reimbursement at issue, it has not precluded review to ensure that the Centers for Medicare & Medicaid Services (CMS) lawfully implements changes under the Medicare Act and the Administrative Procedures Act (APA). 42 U.S.C. § 1395; 5 U.S.C. §§ 551 *et seq*.

4.  The Hospitals allege that CMS violated the Medicare Act when it failed to submit its policy change impacting the Hospitals' reimbursement through audits to Notice-and-Comment Rulemaking. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019).

5.  The Medicare Act requires CMS to promulgate properly any policy—including audit policy and protocols—which may impact a hospital's payment through Notice-and-Comment Rulemaking. *Id.* at 1809. But here, CMS created a new policy which it implemented through Worksheet S-10 Audits used to determine the Hospitals' UC reimbursement without following the required Notice-and-Comment. Because CMS failed to promulgate properly the audit policy—the audit policy is procedurally unlawful under the Medicare Act and its use to alter Hospitals' payments was impermissible.

6.  CMS also violated the APA in two ways. First, CMS implemented S-10 audits applying the changed policy in an arbitrary and capricious manner, harming the Hospitals. Second, CMS's reliance on a procedurally improper policy to change hospital reimbursement was contrary to the law.

7. The APA requires the Secretary to refrain from acting arbitrarily or capriciously when implementing CMS's policies. But the Secretary implemented new reimbursement policy through audits that lacked standard auditing principles and protocols to calculate the Hospitals' Uncompensated Care Disproportionate Share Hospital (UC DSH) adjustments. The lack of standard audit principles and protocols resulted in disparities, inconsistencies, and errors that negatively impacted many hospitals' UC DSH payments. Such arbitrary and capricious implementation of new policy violated the APA.

8. The APA requires the Secretary to act consistently with the law. When CMS used the improper audits as the foundation for determining the Hospitals' UC DSH payments for Federal Fiscal Year (FFY) 2021, he acted inconsistently. Thus, the FFY 2021 UC DSH adjustments published in the Federal Register are contrary to the law and in violation of the APA.

9. The PRRB's jurisdictional dismissals are incorrect because the Preclusion Statute does not apply to the Hospitals challenges. The Preclusion Statute only applies to challenges of estimates used in the substantive calculations made by CMS; not challenges to whether CMS followed the law. Here, the Hospitals challenge the legality of CMS's adjustments because they were procedural violations of the Medicare Act and violated the APA.

10. The Hospitals thus request the Court:

- Declaring invalid and setting aside the final decisions precluding administrative and judicial review of the Plaintiff Hospitals' appeals relating to their UC DSH payments for FFY 2021;

- Declaring invalid the unlawful audit protocols never published through Notice-and-Comment Rulemaking;

- Requiring the Secretary to comply with the duty to promulgate all statements of policy that govern the payment for services through Notice-and-Comment Rulemaking;

- Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospitals; and

Such other relief as this Court may consider appropriate.

## JURISDICTION AND VENUE

11. This Court has subject-matter and personal jurisdiction over this action and the parties under the Medicare Act, the Administrative Procedure Act, or both. 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331.

12. The Secretary has a non-discretionary duty to promulgate all statements of policy that govern the payment for services through Notice-and-Comment Rulemaking. This Court has statutory jurisdiction to compel the Secretary to do so. 28 U.S.C. § 1361.

13. Franciscan Health Hammond, Franciscan Health Michigan City, Franciscan Health Lafayette East, and Franciscan Health Crown Point are located in this judicial district. As the location of the greatest number of providers, this Court has venue and jurisdiction. 42 U.S.C. § 1395oo(f)(1).

## PARTIES

14. The Hospitals were, at all times relevant to this action, qualified as Medicare-participating, general acute care hospital providers in the federal Medicare program and were entitled to UC DSH payments under the Medicare Act.

15. The Hospitals appealed the Secretary's action before the PRRB based on the Federal Register's published adjustments. *See* 84 Fed. Reg. 42366 (codified at 42 C.F.R. § xx-412, 413, and 495). The hospitals received dismissals of these appeals within the past 60 days.

16. Defendant Xavier Becerra, II is the Secretary of HHS. The Secretary, the federal official responsible for administration of the Medicare program, delegated that responsibility to CMS.

## STATUTORY AND REGULATORY BACKGROUND

### A. The Medicare Act and Disproportionate Share Hospital Programs

17. The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395c; 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

18. CMS implements the Medicare program, in part, through issuing official rulings, regulations in the Federal Register, manuals, and subregulatory guidance. *See* 42 C.F.R. § 401.108.

19. The Medicare Act mandates that any rule, requirement, or other statement of policy that affects payment for services be "promulgated by the Secretary" through Notice-and-Comment Rulemaking. 42 U.S.C. § 1395hh(a); *See Allina Health Servs.*, 139 S. Ct. at 1809. This includes any change that "is not a logical outgrowth of previous Notice-and-Comment Rulemaking." 42 U.S.C. § 1395hh(a)(4).

20. The Medicare program is divided into five parts: A, B, C, D, and E. Medicare Part A provides coverage and payment for inpatient hospital services on a fee-for-service basis. *See* 42 U.S.C. § 1395c *et seq*.

6

21. CMS pays Medicare Part A providers for covered services through Medicare Administrative Contractors (MACs) that are agents of the Secretary. Each Medicare-participating hospital is assigned to a MAC that determines the amount of Medicare Part A payments for the hospital under CMS instruction. 42 U.S.C. § 1395h.

22. The hospital inpatient prospective payment system (IPPS) reimburses hospitals for inpatient hospital operating costs. Costs are determined based on predetermined, nationally applicable rates linked to the diagnosis of a patient at the time of discharge from an inpatient stay. These payments are subject to adjustments, including the disproportionate share hospital (DSH) adjustment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

### B. DSH Adjustments

23. Hospitals that treat a disproportionately large number of low-income patients are entitled to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH adjustment increases Medicare payments for hospitals to account for the increased costs associated for treating low-income patients.

24. The Hospitals' DSH calculations were made using the proxy method. Each hospital's DSH adjustment and DSH payment is based on each hospital's Disproportionate Patient Percentage (DPP). 42 U.S.C. § 1395ww(d)(5)(F)(v), (vi).

25. DPP is the sum of two fractions that capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). The sum of the fractions is a proxy to determine the number of low-income patients, rather than having CMS count the actual number of patients.

4857-5599-0276v5

26. The Medicare/SSI Fraction is the percentage of a hospital's inpatients who are entitled both to Medicare Part A and Supplemental Security Income (SSI) benefits during their stay:

$$\frac{\textit{Medicare/SSI Days}}{\textit{Total Medicare Days}}$$

*See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

27. The Medicaid Fraction is the percentage of a hospital's inpatients "who were not entitled to benefits under [Medicare] Part A" but are "eligible for medical assistance" under a state plan during their stay:

$$\frac{\textit{Medicaid, Non-Medicare Days}}{\textit{Total Patient Days}}$$

*See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

### C. Uncompensated Care DSH Payments

28. Through the Affordable Care Act, Congress enacted the UC DSH payment system. 42 U.S.C. § 1395ww(r); 42 C.F.R. § 412.106(f)-(h). UC DSH payments compensate DSH hospitals for the higher cost of serving a disproportionate share of low-income patients. These payments expand a hospital's DSH payments to include "uncompensated care" provided to low-income insured and uninsured patients.

29. Beginning with FFY 2014, a DSH hospital received two separate DSH Payments:

- **Traditional DSH payment:** 25% of the amount due the hospital under the historical DSH methodology; and

- **UC DSH payment:** 75% of CMS's estimate of the traditional DSH payment that would be made for the coming FFY.

8

30. CMS calculates the UC DSH payment for each DSH hospital based on three factors:

- **Factor 1**: 75% of CMS's estimate of the traditional DSH payment for the coming FFY.

- **Factor 2**: An adjustment for CMS's estimate of the percentage change in the national uninsured rate for "the most recent period for which data is available" versus a baseline uninsured rate for 2013, less a small statutory reduction.

- **Factor 3:** Each qualifying DSH hospital's uncompensated care as a percentage of the total uncompensated care for all qualifying DSH hospitals.

31. Factor 3 is the focus of this appeal and equals the amount of uncompensated care reported by a UC DSH hospital divided by the "aggregate amount of uncompensated care" for all UC DSH hospitals. 42 U.S.C. § 1395ww(r)(2)(C). Thus, if a hospital's uncompensated care is understated by an audit, it will receive a reduced percentage of the "total uncompensated care."

32. CMS calculates UC DSH payments before each FFY as part of its annual rulemaking. UC DSH payments for hospitals are posted on the IPPS website.

**D. The Review Preclusion Statute**

33. Under the UC DSH payment system, Congress included the Review Preclusion Statute, limiting administrative or judicial review of "any estimate of the Secretary [or] any period selected by the Secretary" used to determine the three factors. 42 U.S.C. § 1395ww(r)(3).

34. Not included in the Review Preclusion Statute is any language that allows CMS to bypass the procedural and substantive requirements of the Medicare Act or the APA—including Notice-and-Comment Rulemaking.

9

### E. PRRB Review and Judicial Review of PRRB Decisions

35. The PRRB is an administrative tribunal appointed by the Secretary. 42 U.S.C. § 1395oo(h). Each of the appointed members of the PRRB must be "knowledgeable in the field of payment to providers of services" under the Medicare program. *Id.*

36. A hospital may appeal to the PRRB if the hospital is dissatisfied with the Secretary's final determination on the amount of payment the hospital receives. 42 U.S.C. § 1395oo(a)(1)(A)(i). A Federal Register Notice filed by the Secretary is a final determination appealable within 180 days from the date of publication.

37. A hospital may take an appeal to the PRRB individually or pursue a group appeal of an issue that is common to two or more hospitals when the amount in controversy is at least $50,000. 42 U.S.C. § 1395oo(a), (b); 42 C.F.R. § 405.1835; 405.1837.

38. A PRRB decision determination that it lacks authority to decide a question of law is "a final decision and not subject to review by the Secretary." 42 U.S.C. § 1395oo(f)(1).

39. Hospitals have the right to obtain judicial review of that determination by suing in this Court within 60 days of the PRRB's determination. *Id.*

40. Interest is to be awarded in favor of a hospital that prevails in such an action. 42 U.S.C. § 1395oo(f).

### F. The Administrative Procedure Act

41. Under the APA, a reviewing court must invalidate an unlawful agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; is beyond the agency's authority; or is procedurally improper. 5 U.S.C. § 706(2)(A), (C), and (D).

4857-5599-0276v5

42. The APA dictates procedural requirements for rulemaking, specifically requiring the agency to provide notice of proposed rules, to allow interested parties to comment on the proposed rules, and to consider the comments returned. 5 U.S.C. § 553.

### G. The Medicare Act's Notice-and-Comment Rulemaking requirement is independent of the APA's similar requirement.

43. The Supreme Court has held that the Medicare Act independently requires "notice and [a] 60-day comment period – for any 'rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services … under [Medicare]." *Allina Health Servs.*, 139 S. Ct. at 1809.

44. Though similar to the APA's requirements, the Medicare Act Notice-and-Comment requirement places additional procedural requirements on CMS.

### H. CMS Failed to follow the Medicare Act or APA's Notice-and-Comment Requirement when it implemented Worksheet S-10 audits.

45. CMS's audit protocol, as used by the MACs, was never submitted through Notice-and-Comment rulemaking as required by the Medicare Act.

46. CMS S-10 audits lacked standard audit protocols and were thus conducted by CMS—through its Medicare Administrative Contractors (MACs)—in an arbitrary and capricious manner. This subjected different hospitals to receive different UC adjustments based on the same facts.

47. CMS required its MACs to change the values contained on Worksheet S-10 for hospitals eligible for UC DSH payments. For example:

- Some audits led to disallowances and negative adjustments for bad debt and charity-care charges.

- Some audits led to disallowances of charity discounts on copayments allowed under a hospital's financial assistance policy.

- CMS never published notice of these potential changes, through Notice-and-Comment, to Hospitals.

48. The policy change to use Worksheets S-10 audits reduced or otherwise altered the amounts of payments made by CMS to Hospitals.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. Appealing to the PRRB

49. The PRRB is an administrative tribunal appointed by the Secretary. *See* 42 U.S.C. § 1395oo(h). Each of the appointed members of the PRRB must be "knowledgeable in the field of payment to providers of services" under the Medicare program. *Id*.

50. Under 42 U.S.C. § 1395oo(a)(1)(A)(i), a hospital may appeal to the PRRB if the hospital is dissatisfied with the MAC's determination for the amount of Medicare payment due the hospital.

51. A hospital may take an appeal to the PRRB individually or may pursue a group appeal of an issue that is common to two or more hospitals. *See* 42 U.S.C. § 1395oo(a) and (b); 42 C.F.R. § 405.1835 and 405.1837.

52. The amount in controversy for a group appeal to the PRRB must be $50,000 or more in the aggregate. *See* 42 U.S.C. § 1395oo(b); 42 C.F.R. § 405.1835 and 405.1837.

53. The statute provides that the PRRB finding that it lacks authority to decide a question of law "shall be considered a final decision and not subject to review by the Secretary." *See* 42 U.S.C. § 1395oo(f)(1). The statute also grants a hospital the right to obtain judicial review of that question of law by initiating an action in this Court within 60 days of the PRRB's determination. *Id*. Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. § 1395oo(f).

12

**J. The Hospitals Timely Appealed to the PRRB and Are Properly Before This Court.**

54. After the close of each fiscal year, a hospital must file a cost report with its designated MAC. 42 C.F.R. §§ 413.20 & 412.24.

55. The MACs audited Worksheet S-10 of the Hospitals' cost reports. The UC payments that resulted from these audits were published by the Secretary in its Federal Register Notice on September 18, 2020. 85 Fed. Reg. 58432, 58804-58835). A Federal Register Notice filed by the Secretary is a final determination appealable within 180 days from the date of publication. 42 U.S.C. § 1395oo(a)(1)(A)(ii); *see also* PRRB Rules 4.3 and 7.1.1.

56. The Hospitals timely appealed the reimbursement amounts indicated in the Federal Register Notice. The Hospitals filed these appeals before the PRRB on March 10, 2021—within 180 days of the date of publication in the Federal Register.

57. The Hospitals appealed CMS's improper use of the unpublished Worksheet S-10 audit protocols under the Medicare Act and the APA. These audits substantially impacted the FFY 2021 UC DSH payments to Hospitals.

58. On September 22, 2021, the Board dismissed the Hospitals' appeals by concluding it lacked jurisdiction over the appealed issue because of the Review Preclusion Statute. This PRRB finding was incorrect.

59. The Hospitals timely sued for review under 42 U.S.C. § 1395oo(f)(1).

4857-5599-0276v5

**K. The Review Preclusion Statute does not foreclose administrative or judicial review of an CMS' procedurally unlawful propagation of substantive law.**

60. When the Hospitals sought administrative review of the changes made pursuant to the unpublished S-10 audit protocols, the PRRB improperly declined to exercise jurisdiction in reliance on the Review Preclusion Statute.

61. CMS's use of an unpublished audit process and protocols to affect UC DSH payments to Hospitals is neither an "estimate", its underlying and/or intertwined data, or a "time period".

62. The Hospitals' challenges to CMS' use of the procedurally unlawful audits and protocols is not a challenge to an "estimate" or "period." Likewise, it is not a challenge to intertwined data.

63. Rather, the Hospitals are challenging CMS' violation of the Notice-and-Comment requirement under the Medicare Act. CMS carried out this violation by implementing Worksheet S-10 audits that it imposed upon the MACs. In complying with the unpublished protocol, the MACs changed the Hospitals' Worksheet S-10 costs to substantially impact the UC DSH payments the Hospitals received.

64. Because the hospitals challenged the use of an unpublished audit protocol before the PRRB—and not estimates, intertwined data, or periods—the Review Preclusion Statute cannot apply to preclude administrative or judicial review; CMS cannot rely upon an unpublished protocol to change the substantive legal rights of the Hospitals while simultaneously hiding behind the Review Preclusion Statute to avoid a challenge to its refusal to publish the protocol.

65. The PRRB based its jurisdictional dismissal upon the inapplicable Review Preclusion Statute; this Court must reverse that jurisdictional decision and remand the

Hospitals' appeal to the PRRB so that the administrative record can be completed and a hearing can be conducted.

### BASES OF APPEAL

### Violation of the Medicare Act

66. Plaintiffs incorporate the allegations from all previous paragraphs as if set forth fully above.

67. The Medicare Act requires the Secretary to subject any policies impacting a provider's payment to Notice-and-Comment Rulemaking. 42 U.S.C. § 1395; *Allina Health Servs.*, 139 S. Ct. at 1809.

68. The S-10 Audit protocol was such a policy but was not subjected to Notice-and-Comment Rulemaking.

69. The adjustments thus violated the Medicare Act.

70. The unlawful adjustments were reported in the Federal Register.

71. The PRRB's dismissal of the Hospitals' actions was incorrect because nothing in the Review Preclusion Statute exempts the Secretary from adhering to the Medicare Act or precludes the PRRB or a court from reviewing such procedurally unlawful agency action.

### Violations of the APA

72. The Plaintiffs incorporate the allegations from all previous paragraphs as if set forth fully here.

73. The Secretary cannot bypass his obligations under the APA to implement the Medicare Act in accordance with the law or in neither an arbitrary or capricious manner. 5 U.S.C. § 706(2). For these two reasons, the Secretary violated the APA.

74. The 2017 Worksheet S-10 Audits are procedurally improper under the Medicare Act and the APA because they were not adopted as a regulation through Notice-and-Comment rulemaking.

75. The Secretary's inclusion of the S-10 Audits in the adjustments that reduced the Hospitals' UC DSH payments is thus contrary to the law. By acting contrary to the law, the Secretary violated the APA.

76. Moreover, the Secretary's inclusion of an improperly created S-10 Audits was itself arbitrary and capricious.

77. The PRRB's dismissal of the Hospitals' actions was incorrect because nothing in the Review Preclusion Statute exempts the Secretary from adhering to the Medicare Act and APA's requirements—nor precludes the review of such *ultra vires* actions.

## REQUEST FOR RELIEF

**Therefore**, the Hospitals request an Order:

1. Declaring invalid and setting aside the final decisions precluding administrative and judicial review of the Plaintiff Hospitals' appeals relating to their UC DSH payments for FFY 2021;

2. Declaring invalid the unlawful audit protocols never published through Notice-and-Comment Rulemaking;

3. Requiring the Secretary to comply with the duty to promulgate all statements of policy that govern the payment for services through Notice-and-Comment Rulemaking;

4. Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospitals; and

5. Such other relief as this Court may consider appropriate.

Respectfully Submitted,

Hall, Render, Killian, Heath & Lyman, P.C.

By: /s/Andrew B. Howk
Andrew B. Howk, Attorney No. 30684-49
Ryan A. McDonald, Attorney No. 36118-30
500 North Meridian Street, Suite 400
Indianapolis, IN  46204-1293
Ph:  (317) 633-4884
Email: ahowk@hallrender.com

*Attorneys for Plaintiffs*

4857-5599-0276v5